# EXHIBIT B

CAUSE NO. 18-07-09586

| | | |
|---|---|---|
| **CLAYTON L. MILLER,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff** | § | Montgomery County - 284th Judicial District Court |
| **v** | §. | **_____ JUDICIAL DISTRICT** |
| | § | |
| **SAMSUNG ELECTRONICS** | § | |
| **AMERICA, INC, Defendant.** | § | **MONTGOMERY COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT SEEKING RELIEF FROM DEFENDANT'S UNENFORCEABLE CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

Plaintiff, Clayton L. Miller, files this original petition for declaratory judgment seeking relief against Defendant, Samsung Electronics America, Inc.

### DISCOVERY CONTROL PLAN

1.    Plaintiff intends to conduct discovery under Level 1 of the TEXAS RULES OF CIVIL PROCEDURE.

### EXPEDITED ACTIONS PROCESS GOVERNS

2.    Plaintiff affirmatively pleads that this suit is governed by TEXAS RULES OF CIVIL PROCEDURE, Rule 169, the expedited- action process and the TEXAS CIVIL PRACTICE & REMEDIES CODE, Ch. 37, §37.001 *et seq.*

### CLAIM FOR RELIEF

3.    Plaintiff seeks monetary relief of $100,00 or less and nonmonetary relief.

### PARTIES

4.    Plaintiff, Clayton L. Miller, is an individual residing in Montgomery County, Texas, formerly employed by Defendant in the State of Texas.  The last three digits of

Plaintiff Texas Driver's License are XXXX271. The last three digits of Plaintiff's social security number are XXX-XX-X180.

5.  Defendant is Samsung Electronics America, Inc. (hereinafter "Samsung Electronics" or "Samsung"). Samsung Electronics has its primary place of business at 85 Challenger Road, Ridgefield Park, New Jersey, 07660. Samsung Electronics is a foreign corporation, incorporated in the State of New York , registered to do business in the State of Texas, and may be served by serving its registered agent for service of process, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136

### JURISDICTION AND VENUE

6.  A justiciable controversy exists between the parties. Jurisdiction is proper in the State of Texas because no other state has a substantial relationship to the Plaintiff. There is no other reasonable basis for any state other Texas to take jurisdiction, and application of the law of any other state would be contrary to fundamental policies of the State of Texas which has a materially greater interest that any other state in the determination of the issues presented.

7.  Venue is proper in Montgomery County, Texas because this is the county in which Plaintiff resides and in which Defendant does business.

### FACTS

8.  Mr. Miller was employed by Samsung Electronics America, Inc, on or about May 15, 2006 in sales. At that time, Mr. Miller was living in Chicago and was immediately transferred and moved by Samsung to Texas, where he still resides.

9.  As part of his first activities of employment, Mr. Miller was required to execute a

"Confidentiality Non-Competition and Non-Solicitation Agreement." Mr. Miller does not recall being provided with a copy of this "Agreement."

10. On occasions, during his twelve year stint with Samsung, Mr. Miller would forward Samsung documents to his home email as a back up for an account presentation. Sometimes he was even directed to do so by his supervisor, Tracy Young, so he could print them at home.

10. After approximately twelve years of employment dedicated to Samsung Electronics, Mr. Miller became disenchanted with Samsung's failed promises of promotion and advancement, and he decided to look for work elsewhere.

11. Mr. Miller requested copies of all his documents from the Samsung HR Manager Vincenzo Caruso on or about May 1, 2018. He was not provided with copies of anything.

12. Mr. Miller secured future employment with LG Electronics America, Inc. and on July 2, 2018, Mr. Miller gave notice and left Samsung's employ. He immediately shipped his company laptop and company cell phone back to the company.

13. On or abut July 11, 2018, Mr. Miller received an email letter from Ms. Julie L. Weber, Senior Legal Counsel, Employment Law, Samsung Electronics America, Inc. (hereinafter "Samsung letter," attached hereto as Exhibit A).

14. Enclosed with Ms. Weber's July 11, 2018 letter were:

    a)      a copy entitled "Confidentiality Non-Competition and Non-Solicitation Agreement" (hereinafter the "Agreement" and attached hereto as Exhibit B); and

    b)      a letter to Richard Wingate, Vice President Compliance & Legal, General

Counsel, LG Electronics U.S.A., Inc (hereinafter "LG letter" and attached hereto as Exhibit C).

15. The Samsung letter regurgitated some of the verbiage from the purported 2006 "Agreement" and identified some documents which Mr Miller had forwarded to his personal gmail account on June 26, 2018, in preparation for a meeting with Conn's, a Samsung account of Mr. Miller's, as he had done on other occasions in preparation for such meetings.

16. Ms. Weber demanded that Mr. Miller follow a laundry list of steps, some of which were conflicting, and which included an insistence that he was prevented by the "Agreement" from working for another employer for a period of six months.

17. He was asked to return everything, including data in electronic format and was also then told he must preserve everything, including data in electronic format.

18. Mr. Miller is married, has a two year old and an infant. He is not financially able to go without work for a period of six months.

19. In a spirit of cooperation, Mr. Miller verified that he had not shared anything with LG Electronics, nor did LG Electronics ask him to do so. Mr. Miller asked for instruction from Samsung on how it would like him to destroy the data relating to his employment with them and what they would require from him to verify the same.

20 Additionally, Mr. Miller requested that Samsung immediately release him from any perceived obligations under the purported Agreement, so he can go to work adne arn a living.

21.     Plaintiff seeks deceleration from the Court that the alleged "Agreement" dated May 15, 2006, attached hereto as Exhibit B, is unenforceable in whole or in part, based on the following reasons:

## COUNT I

22.     Plaintiff hereby incorporates the preceding paragraphs 1-21 by reference.

23.     Mr. Miller specifically alleges that the entire alleged "Agreement" is not enforceable as follows:

   a.     Lack of Consideration – the alleged "Agreement fails for lack of consideration in that at its inception, obligations were not imposed on both parties. There is no mutuality of obligation. The only consideration imposed on the Company by the "Agreement" is "that it "employs or continues to employ" Mr. Miller. (Ex. B, ¶ 1, p.1) That consideration is illusory and fails. The "Agreement" also allows that the Company "may terminate" its employment relationship with Mr. Miller for "any reason, with or without cause and without notice." (Ex. B, ¶ 14, p.3). The Company has no obligation to continue to employ and thus its consideration fails.

   b.     Patent Ambiguity — the alleged "Agreement" fails because it is ambiguous on its face. The "Agreement" requires Mr. Miller to "abide by the policies of the Company." (Ex. B, ¶ 2, p.1). However, the alleged "Agreement" allows that the "Company may change such policies from time to time without prior notice" to Mr. Miller. *id.* Such language, inserted by Samsung

in this "Agreement" renders Mr. Miller's responsibilities incapable of determination and renders the "Agreement" unenforceable due to ambiguity. Additionally, such ambiguity should be construed against Samsung as the drafter of the alleged "Agreement."

c.     Samsung had legally imposed duty to take reasonable steps and/or reasonable measures under the circumstances to preserve that information it now seeks to keep secret.  Samsung failed to perform this duty.  Samsung cannot therefor be heard to complain about Mr. Miller's conduct and may not act as a party to any claim that Mr. Miller misappropriated trade secrets or confidential information because it failed to take reasonable measures to protect the same. *See* TEXAS CIVIL PRACTICE & REMEDIES CODE, Ch. 6, §134A .002 (6)(A).

## COUNT II

24.     Plaintiff hereby incorporates the preceding paragraphs 1-23 by reference.

25.     Mr. Miller further alleges that the "Non-Competition" requirement stated in the alleged "Agreement" is additionally unenforceable on its own.  (Ex. B, ¶ 11, p.2). The "Non-Competition" clause fails to comply with the requirements of the TEXAS BUSINESS & COMMERCE CODE as it is not ancillary to or part of an otherwise enforceable agreement. *See* TEXAS BUSINESS & COMMERCE CODE, Ch. 15, §15.50-52.

## ATTORNEY FEES

26.     Plaintiff hereby incorporates the preceding paragraphs 1-25 by reference.

27.     Plaintiff is entitled to recover reasonable and necessary attorney fees that are equitable and just under TEXAS CIVIL PRACTICE & REMEDIES CODE, §37.009 because this is a suit for declaratory relief.

**CONDITIONS PRECEDENT**

28.     Plaintiff hereby incorporates the preceding paragraphs 1-27 by reference.

29.     All conditions precedent to Plaintiff's claim for relief have been tendered, performed, or have occurred.

### REQUEST FOR DISCLOSURE

30.     Under TEXAS RULES OF CIVIL PROCEDURE, Rule 194, Plaintiff requests that Defendant, disclose within 50 days of service of this request, the information or material described in Rule 194.2.

### PRAYER

For these reasons, Plaintiff asks that Defendant be cited to appear and answer and that the Court declare the alleged "Agreement" unenforceable in whole or in part.  In addition, Plaintiff asks for the following damages:

a.     Actual damages , including lost wages and benefits caused by Defendant's conduct and threats to Plaintiff's new employer;

b.     Prejudgment and postjudgment interest;

c.     Court costs;

d.     Attorney fees; and

e.     All other relief to which Plaintiff is entitled.

Respectfully submitted,
LAW OFFICE OF JO MILLER, PLLC
505 North Main
The Parsonage
Conroe, TX 77301
Tel: (936) 539-4400
Fax: (936) 539-4409
jmiller@jomillerlaw.com


By: /s/ Jo Miller
    Jo Miller
    State Bar No. 00791268
    Attorney-in-Charge for Plaintiff,
    Clayton L. Miller

# Exhibit A

# SAMSUNG

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, New Jersey 07660
(201) 229-4000

**VIA ELECTRONIC (claylmiller@gmail.com) AND OVERNIGHT MAIL**

July 11, 2018

Clayton Miller
184 Harley Drive
Montgomery, TX 77356

> **Re:** **Breach of SEA Security Policy and**
> **Reminder of Post-Employment Obligations**

Dear Mr. Miller,

It has come to the attention of Samsung Electronics America, Inc. ("SEA" or the "Company") that, prior to your voluntary separation from SEA, you sent numerous files containing highly confidential and proprietary Company information outside of the SEA network, namely from your SEA Company email account to your personal Gmail account (claylmiller@gmail.com).

By way of example, on June 26, 2018, the week before you gave notice of your resignation, you sent an email to your personal Gmail account with the subject "junk" that attached nine documents marked "Samsung Proprietary and Confidential," including materials containing customer pricing data, sell thru information, SEA 2018 holiday retail plans/pricing and other sensitive sales data. Specifically, the attachments you forwarded included the following confidential and proprietary documents:

- Conns Meeting_06-22-2018.pptx
- Conn's Meeting -6 27 18 v2.pptx
- 2017 – 2018 Wk 24 TV Sell Thru – West.xlsx
- 2018 TV Holiday Internal 180622.pdf
- Template update (replenish).xlsx
- Conn's VR 2018 (6.19).xlsx
- 2018 Conn's Pricing WIPv2 (3) (2).xlsx
- Conn's 2018 DAV Invoice 021618 (2).xlsx
- Conn's TV 2017 vs 2016 comp chart.xlsx

Removal of these and other confidential and proprietary documents constitutes a clear violation of SEA's Security Policy, which prohibits employees from, among other things, taking "confidential company documents or software outside the [C]ompany" or "upload[ing] information for personal use," as well as the Confidentiality, Non-Competition and Non-Solicitation Agreement you signed and accepted on May 15, 2006 ("Confidentiality Agreement").

This letter serves as a formal reminder from SEA of your post-employment obligations under your Confidentiality Agreement, a copy of which is attached hereto. While SEA expects you to honor all of your obligations under the Confidentiality Agreement, please take particular note that you are contractually bound to abide by the following:

- **Confidentiality Obligations**: Not to disclose to others or use for your or another's benefit any Trade Secrets or Confidential Information (as defined in the Confidentiality Agreement) either during your employment with SEA or at any time thereafter.

- **Return of SEA Property**: To deliver to SEA immediately upon termination of your employment all SEA property in your possession or under your control, including but not limited to, all records, files, reports, data, memoranda, notes, drafts and other documents and copies thereof, models and equipment of any nature owned by SEA.

- **Post-Employment Non-Competition Obligation**: Not to enter into or engage, as an employee or otherwise, in a business that is competitive with SEA, anywhere within Texas, in any product category for which you had responsibilities while employed by SEA, for a period of *six (6) months after the termination of your employment with SEA*.

- **Post-Employment Non-Solicitation Obligation (Customers)**: Not to solicit or attempt to solicit on your own behalf or on behalf of any of SEA's competitors, or assist any of SEA's competitors in soliciting, any customer or customer account with which you had contact during the last year of your employment with SEA, for a period of *six (6) months after the termination of your employment with SEA*.

- **Post-Employment Non-Solicitation Obligation (Employees/Independent Contractors)**: Not to solicit or cause to be solicited any employee or independent contractor of SEA to leave or terminate his/her employment or business relationship with the Company, for a period of *six (6) months after the termination of your employment with SEA*.

- **Disclosures of Confidentiality Agreement**: To deliver a copy of the Confidentiality Agreement to each SEA competitor with which you seek employment, partnership, or other business association, during the *six (6) months after the termination of your employment with SEA*.

It is our understanding that you intend to join LG in the near future in a sales role similar to the position you held with SEA. Unfortunately, your clear misappropriation of SEA competitive, confidential and proprietary information, in violation of the Company's Security Policy and your Confidentiality Agreement, strongly suggests that you do not intend to honor your post-employment obligations to SEA.

SEA takes these actions seriously and continues to investigate this matter. Please be advised that any use or disclosure of SEA's confidential information and trade secrets is strictly prohibited under the Confidentiality Agreement and the federal Defend Trade Secrets Act. To the extent that this matter cannot be amicably resolved, SEA is prepared to take legal action against you and any company that employs you in violation of your restrictive covenants to enforce the terms

of your Confidentiality Agreement, including but not limited to your post-employment confidentiality, non-competition, and non-solicitation obligations.

**In order to avoid legal action, SEA demands that you <u>immediately</u> take the steps below and provide a signed certification attesting to the following:**

(1) Immediately return to SEA all SEA property in your possession, custody or control, including but not limited to electronic devices, documents and information, whether in hard copy or electronic format. SEA's property must be returned intact and without alteration. **To be clear, you are directed to return all SEA property, including any and all copies of documents and information, and are <u>not</u> to delete, discard, destroy, damage, or otherwise compromise the SEA property in your possession, custody or control.** All SEA property must be returned to Mary Kim-Candullo, Director of Human Resources, at Samsung Electronics America, Inc., 85 Challenger Road, Ridgefield Park, New Jersey 07660.

(2) To the extent that any of SEA's confidential or proprietary information or documents are stored on any of your personal electronic devices (including computers, tablets, USBs, and cell phones), your personal email account, or any other storage medium or electronic format (i.e., data files, emails in a "cloud" or otherwise), regardless of whether the medium is owned by you or a third party, you must immediately preserve and identify such information or documents in order for SEA to take steps to retrieve them. **You are expected to truthfully identify all SEA information and/or documents on your personal devices so that SEA may retrieve its property, and are <u>not</u> to delete, discard, destroy, damage, or otherwise compromise the SEA property in your possession, custody or control.**

(3) Confirm in writing that you have not disclosed any SEA confidential or proprietary information or documents to any third parties, including but not limited to LG.

(4) To the extent that you have disclosed SEA confidential or proprietary information or documents to any third party, you are directed to identify all third parties (including LG) to whom you have disclosed SEA's confidential or proprietary information or documents, and identify such information and documents.

(5) Cease and desist from any further breaches of your confidentiality, non-competition, non-solicitation, and other obligations to SEA, and further confirm in writing your intention to abide by your 6-month non-competition and non-solicitation restrictions, as set forth in the Confidentiality Agreement.

The Company reserves all rights to seek injunctive relief as well as monetary damages, as necessary to protect the Company's business interests, both for the misconduct that has already occurred, as well as any future violations of your Confidentiality Agreement. Nothing contained in this letter should be construed as a waiver of any of SEA's legal claims, positions, arguments or contentions.

In light of the potential for future litigation regarding these matters, SEA expects that you will fully comply with your legal obligation to preserve all potentially relevant documents and electronic data in your possession, custody, or control, and also put on notice all third parties that may be in possession of relevant data (including Google/Gmail) of this potential litigation. This obligation extends to, but is not limited to, all documents, e-mails, and other communications relating in any way to your employment with SEA and your recruitment, hire, and/or communications of any nature with LG.

Please be guided accordingly and respond no later than close of business on **Friday, July 13** to confirm your compliance with the above. If you are represented by counsel, please share this correspondence with your attorney immediately. If you or your attorney would like to discuss this matter, please contact me.

Sincerely,

Julie Weber

Julie L. Weber
Senior Legal Counsel, Employment Law
Samsung Electronics America, Inc.

Attachment

cc:     Mary Kim-Candullo, Director of Human Resources

# CONFIDENTIALITY, NON-COMPETITION AND
## NON-SOLICITATION AGREEMENT

THIS AGREEMENT is made this _l5_ day of May, 2006, by and between Samsung Electronics America, its direct or indirect parent organizations, subsidiaries, divisions and associated and affiliated entities (hereinafter called the "Company") and Clay L. Miller ("Employee").

WHEREAS, The Company is a provider of consumer electronics and information technology products; and Employee desires to become or remain employed by the Company. In consideration of the employment of Employee by the Company, and other good and valuable consideration to the Employee including , the receipt and sufficiency of which is acknowledged by Employee, the parties agree as follows:

1.     **EMPLOYMENT.** The Company hereby employs or continues to employ the Employee as an employee of the Company.

2.     **INTENTION.** During the course of employment, the Employee will serve the Company faithfully, devote the Employee's best efforts to carry out the Employee's responsibility on behalf of the Company, and will not engage in any employment activity for others (for compensation or otherwise) without the prior written consent of the Company.   The Employee will abide by the policies of the Company and the Employee understands that the Company may change such policies from time to time without prior notice to the Employee.

3.     **TRADE SECRETS.** The term "Trade Secrets" means any scientific or technical information, design, process, procedure, formula, pattern, device or compilation of information or improvement which is used in the Company's business which is valuable and not generally known to third parties. Trade Secrets shall include, without limitation, information and documentation pertaining to the design, specifications, capacity, testing, installation, implementation and customizing techniques and procedures concerning the Company's present and future products and services, manufacturing process, treating or preserving materials, a pattern for a machine or other device, and a list of customers.  The Employee recognizes that such Trade Secrets are the property of the Company, and the Employee shall not disclose to others (except as required in the Employee's duties to the Company), nor will the Employee use for the Employee's or another's benefit any such Trade Secrets, either during the Employee's employment with the Company or thereafter, as long as such Trade Secrets learned by Employee during employment by Company are not in the public domain..

4.     **CONFIDENTIAL INFORMATION.** The term "Confidential Information" means any proprietary or business-sensitive information which is not known to the public and which, if released to unauthorized persons, would be detrimental to the reputation or business interests of the Company, its affiliates or parties with which it does business, or would permit such unauthorized persons to improperly benefit.  Confidential information includes but is not limited to: (i) financial information; (ii) customer information, including but not limited to customer/client names, telephone numbers, addresses, any compilations of past, existing or prospective customers, customer proposals or agreements, status of customer accounts or credit, customer needs or related information about actual or prospective customers; (iii) supply and service information; (iv) marketing information; (v) personnel information; (vi) business operations information; and (vii) any formula, pattern, device or compilation of information which is used in the Company's business and which gives the Company an advantage over its competitors.  The Employee recognizes that such Confidential Information is the property of the Company, and the Employee shall not disclose to others (except as required in the Employee's duties to the Company), nor will the Employee use for the Employee's or another's benefit any such Confidential Information, either during the Employee's employment with the Company or thereafter.

5.     **RETURN OF COMPANY PROPERTY.** The Employee shall immediately upon termination of the Employee's employment with the Company, for any reason, deliver to the Company all records, files, reports, data, memoranda, notes, drafts and other documents and copies thereof, models and equipment of any nature prepared or acquired, that

are owned by the Company, in the Employee's course of employment with the Company ("Company Property") which are in the possession or under the control of the Employee. The Employee shall not keep any such Company Property, after termination of employment, without the written authorization of SEA's Director of Human Resources.

6. **INVENTIONS, IDEAS, AND OTHER INTELLECTUAL DEVELOPMENTS.** In view of the purposes of the Company and the need to secure for the Company or Interested Parties (defined below) their right to Intellectual Developments (defined below) related to the business of the Company or such Interested Party, the Employee understands that the Company must be in a position to use, assign, and otherwise dispose of Intellectual Developments made by its staff members and employees. Accordingly, except for those items excluded by Paragraph 9 below, the Employee shall promptly disclose to the Company and, when requested, furnish to the Company a complete record of every discovery, invention, improvement, innovation, design, copyright, and other definite and useful idea or compilation of information of value which the Employee may make or originate, individually or with others, at any time during the term and in the course and scope of the Employee's employment by the Company (individually and collectively an "Intellectual Development"). The Employee hereby assigns to the Company or its nominee the entire rights throughout the world to such Intellectual Developments which relate to the current or potential business or activities of the Company or any Interested Parties or which results from the Employee's work with the Company. The term "Interested Parties" means any person having a business relationship with the Company where the relationship gives rise to a claim by that person to Intellectual Developments made by staff members and employees of the Company.

7. **COOPERATION.** The Employee shall fully cooperate with the Company or its designees in securing, in the name of the Company or its designees, rights with respect to the Intellectual Developments described in Paragraph 6 above, in all countries, and at the Company's expense. The Employee shall promptly execute all proper documents presented for signature and do all things reasonably required to enable the Company or its designees to accomplish the above, at any time during or after the Employee's employment, at the Company's expense.

8. **INFORMATION AND TESTIMONY.** The Employee shall, without expense to Employee, during the Employee's employment, give such true information and testimony, under oath if requested, as may be requested by the Company or its designees relative to any Intellectual Development described in Paragraph 6 above. If such testimony is required after the Employee's employment, Company shall pay all reasonable expenses incurred by Employee and shall reimburse Employee for reasonable lost income, excluding bonuses and other discretionary income, resulting from Employee's compliance with this provision.

9. **INTEREST OF THE EMPLOYEE.** As to inventions, applications for patents, and copyrightable material in which the Employee presently holds an interest and which are not subject to this Agreement:

Check One:      _X_  The Employee has no such property.

                ____ The Employee has described all such property in Paragraph 10, below.

10. **DESCRIPTION OF INVENTIONS, APPLICATIONS FOR PATENTS AND COPYRIGHT MATERIAL EXEMPTED IN PARAGRAPH 8.**


By:_____ on_____
       Staff Member                    Date

11. **NON-COMPETITION.** The Employee agrees that during the course of Employee's employment and for a period of six (6) months after the termination of his employment with the Company, whether voluntary or involuntary, or for six (6) months from the date of any court order enforcing this provision, whichever is later, the Employee shall not, directly or indirectly, enter into, or engage, as an employee, officer, director, shareholder, partner or in any other capacity in, a business which is competitive with the Company, anywhere within Texas, the same being the territory in which the Company conducts its business, in any product category for which Employee

had responsibilities while employed by the Company. The Employee further agrees that while employed by the Company, he will not have any financial interest, directly or indirectly or, on his own behalf or another's behalf, engage in any manner in any business similar to the business of the Company.

12.    **NON-SOLICITATION.** (A)The Employee agrees that during the course of Employee's employment and for a period of six (6) months after the cessation of his employment, for any reason, or for six (6) months from the date of any court order enforcing this provision of this Agreement, whichever is later, the Employee shall not solicit on the Employee's behalf or on behalf of any of the Company's competitors, or attempt to solicit on Employee's behalf or on behalf of any of the Company's competitors, or assist any of the Company's competitors in soliciting any customer or customer account with which Employee had contact during the last (1) year of the Employee's employment with the Company; and  (B) Employee shall not solicit, or cause to be solicited, directly or indirectly, any employee or independent contractor of the Company to leave or terminate the employment or business relationship with the Company

13.    **REASONABLENESS OF RESTRAINTS, IRREPARABLE HARM.** The Employee acknowledges, with respect to Paragraphs 4, 11, and 12, that: a) the covenants contained therein are reasonably necessary to protect the goodwill, trade secrets, and other business interests of the Company; b) any breach of the covenants contained therein will cause the Company immediate irreparable harm for which injunctive relief would be necessary; c) the covenants contained therein are essential and material elements of this Agreement and the Company would not have entered into this Agreement or permitted the Employee to obtain employment or remain employed without those covenants being included in this Agreement; d) the Employee has had the opportunity to consult with and be advised by legal counsel concerning the reasonableness and propriety of the covenants contained therein; and e) in the event of any violation or attempted violation of the covenants contained therein, the Company shall be entitled to a temporary restraining order, temporary or permanent injunctions, and other injunctive relief, without any showing of irreparable harm or damage, and without posting a bond, in addition to any other rights or remedies which may then be available to the Company.

14.    **EMPLOYMENT AT-WILL.** The Employee acknowledges that the Employee's employment relationship with the Company is at-will and that either party may terminate the relationship, for any reason, with or without cause and without notice.

15.    **WAIVER OF BREACH.** The Company's waiver of a breach of any provision of this Agreement by the Employee does not waive any subsequent breach by the Employee, nor does the Company's failure to take action against any other employee for similar breaches operate as a waiver by the Company of a breach.

16.    **EMPLOYEE'S REPRESENTATION AND WARRANTIES.** Employee represents that he or she is not subject to any agreement or restriction limiting in any way the scope of this Agreement, or in any way inconsistent with any of the promises made by Employee in this Agreement. Employee also understands that the Company will not require nor expect Employee to disclose to the Company or use at or for the Company any secret or confidential information or trade secret that the Employee obtained from any of his or her former employers, which is not publicly available. Employee agrees not to use at or for the Company any such secrets or confidential information. Employee agrees to indemnify and hold the Company harmless from any and all claims that this Agreement and/or employment of Employee by the Company violate the rights of any third party or parties, and from any costs and expenses, including attorneys' fees, incurred by the Company in the defense thereof.

17.    **DISCLOSURES OF THIS AGREEMENT.** The Employee shall deliver a copy of the Agreement to each person, firm or other entity which is competitive with the Company, and with which he seeks employment, partnership, or other business association within six (6) months of termination of the Employee's employment with the Company, whether by resignation or otherwise. Employee agrees that at the termination of employment with the Company, Employee shall inform the Company of the name and address of the Employee's new employer prior to commencement of that new employment relationship. The Employee further consents to the Company transmitting a copy of this Agreement to any person or firm with which the Employee seeks employment, partnership, or other business association within six(6) months of termination of the Employee's employment with the Company, whether by resignation or otherwise.

3

18.    **FORUM AND LAW SELECTION.**  This Agreement shall be construed in accordance with and governed for all purposes by the law of the State of New Jersey, without regard to its conflict of law provisions.  The parties consent and agree that any and all litigation between them arising from this Agreement shall take place in the State of New Jersey and Employee hereby expressly consents to the jurisdiction of the federal or state courts of New Jersey.

19.    **MISCELLANEOUS.**  This Agreement supersedes any and all prior understandings and agreements between the parties concerning the Employee's ability to compete with The Company, and/or to solicit its customers, potential customers, employees and independent contractors.  This Agreement may not be altered or amended except in writing, signed by the Employee and an authorized representative of the Company.  To the extent any portion of this Agreement, or any portion of any provision of this Agreement, is held to be invalid or unenforceable, it shall be construed by limiting and reducing it so as to be enforceable to the extent compatible with applicable law.  All remaining provisions, and/or portions thereof, shall remain in full force and effect.  This Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns, related or associated entities, and the Employee.

        IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above mentioned.


**Samsung Electronics America**                          **"Employee"**


By:_____

                                            _____
                                            Employee—Clay L. Miller

                                            _____
                                            Witness

4

# Exhibit
# B

# CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

THIS AGREEMENT is made this *15* day of May, 2006, by and between Samsung Electronics America, its direct or indirect parent organizations, subsidiaries, divisions and associated and affiliated entities (hereinafter called the "Company") and Clay L. Miller ("Employee").

WHEREAS, The Company is a provider of consumer electronics and information technology products; and Employee desires to become or remain employed by the Company. In consideration of the employment of Employee by the Company, and other good and valuable consideration to the Employee including, the receipt and sufficiency of which is acknowledged by Employee, the parties agree as follows:

1. **EMPLOYMENT.** The Company hereby employs or continues to employ the Employee as an employee of the Company.

2. **INTENTION.** During the course of employment, the Employee will serve the Company faithfully, devote the Employee's best efforts to carry out the Employee's responsibility on behalf of the Company, and will not engage in any employment activity for others (for compensation or otherwise) without the prior written consent of the Company. The Employee will abide by the policies of the Company and the Employee understands that the Company may change such policies from time to time without prior notice to the Employee.

3. **TRADE SECRETS.** The term "Trade Secrets" means any scientific or technical information, design, process, procedure, formula, pattern, device or compilation of information or improvement which is used in the Company's business which is valuable and not generally known to third parties. Trade Secrets shall include, without limitation, information and documentation pertaining to the design, specifications, capacity, testing, installation, implementation and customizing techniques and procedures concerning the Company's present and future products and services, manufacturing process, treating or preserving materials, a pattern for a machine or other device, and a list of customers. The Employee recognizes that such Trade Secrets are the property of the Company, and the Employee shall not disclose to others (except as required in the Employee's duties to the Company), nor will the Employee use for the Employee's or another's benefit any such Trade Secrets, either during the Employee's employment with the Company or thereafter, as long as such Trade Secrets learned by Employee during employment by Company are not in the public domain..

4. **CONFIDENTIAL INFORMATION.** The term "Confidential Information" means any proprietary or business-sensitive information which is not known to the public and which, if released to unauthorized persons, would be detrimental to the reputation or business interests of the Company, its affiliates or parties with which it does business, or would permit such unauthorized persons to improperly benefit. Confidential information includes but is not limited to: (i) financial information; (ii) customer information, including but not limited to customer/client names, telephone numbers, addresses, any compilations of past, existing or prospective customers, customer proposals or agreements, status of customer accounts or credit, customer needs or related information about actual or prospective customers; (iii) supply and service information; (iv) marketing information; (v) personnel information; (vi) business operations information; and (vii) any formula, pattern, device or compilation of information which is used in the Company's business and which gives the Company an advantage over its competitors. The Employee recognizes that such Confidential Information is the property of the Company, and the Employee shall not disclose to others (except as required in the Employee's duties to the Company), nor will the Employee use for the Employee's or another's benefit any such Confidential Information, either during the Employee's employment with the Company or thereafter.

5. **RETURN OF COMPANY PROPERTY.** The Employee shall immediately upon termination of the Employee's employment with the Company, for any reason, deliver to the Company all records, files, reports, data, memoranda, notes, drafts and other documents and copies thereof, models and equipment of any nature prepared or acquired, that

are owned by the Company, in the Employee's course of employment with the Company ("Company Property") which are in the possession or under the control of the Employee. The Employee shall not keep any such Company Property, after termination of employment, without the written authorization of SEA's Director of Human Resources.

6. **INVENTIONS, IDEAS, AND OTHER INTELLECTUAL DEVELOPMENTS.** In view of the purposes of the Company and the need to secure for the Company or Interested Parties (defined below) their right to Intellectual Developments (defined below) related to the business of the Company or such Interested Party, the Employee understands that the Company must be in a position to use, assign, and otherwise dispose of Intellectual Developments made by its staff members and employees. Accordingly, except for those items excluded by Paragraph 9 below, the Employee shall promptly disclose to the Company and, when requested, furnish to the Company a complete record of every discovery, invention, improvement, innovation, design, copyright, and other definite and useful idea or compilation of information of value which the Employee may make or originate, individually or with others, at any time during the term and in the course and scope of the Employee's employment by the Company (individually and collectively an "Intellectual Development"). The Employee hereby assigns to the Company or its nominee the entire rights throughout the world to such Intellectual Developments which relate to the current or potential business or activities of the Company or any Interested Parties or which results from the Employee's work with the Company. The term "Interested Parties" means any person having a business relationship with the Company where the relationship gives rise to a claim by that person to Intellectual Developments made by staff members and employees of the Company.

7. **COOPERATION.** The Employee shall fully cooperate with the Company or its designees in securing, in the name of the Company or its designees, rights with respect to the Intellectual Developments described in Paragraph 6 above, in all countries, and at the Company's expense. The Employee shall promptly execute all proper documents presented for signature and do all things reasonably required to enable the Company or its designees to accomplish the above, at any time during or after the Employee's employment, at the Company's expense.

8. **INFORMATION AND TESTIMONY.** The Employee shall, without expense to Employee, during the Employee's employment, give such true information and testimony, under oath if requested, as may be requested by the Company or its designees relative to any Intellectual Development described in Paragraph 6 above. If such testimony is required after the Employee's employment, Company shall pay all reasonable expenses incurred by Employee and shall reimburse Employee for reasonable lost income, excluding bonuses and other discretionary income, resulting from Employee's compliance with this provision.

9. **INTEREST OF THE EMPLOYEE.** As to inventions, applications for patents, and copyrightable material in which the Employee presently holds an interest and which are not subject to this Agreement:

Check One:      ☒ The Employee has no such property.

                ___ The Employee has described all such property in Paragraph 10, below.

10. **DESCRIPTION OF INVENTIONS, APPLICATIONS FOR PATENTS AND COPYRIGHT MATERIAL EXEMPTED IN PARAGRAPH 8.**


     By:_____ on_____
          Staff Member              Date


11. **NON-COMPETITION.** The Employee agrees that during the course of Employee's employment and for a period of six (6) months after the termination of his employment with the Company, whether voluntary or involuntary, or for six (6) months from the date of any court order enforcing this provision, whichever is later, the Employee shall not, directly or indirectly, enter into, or engage, as an employee, officer, director, shareholder, partner or in any other capacity in, a business which is competitive with the Company, anywhere within Texas, the same being the territory in which the Company conducts its business, in any product category for which Employee

had responsibilities while employed by the Company. The Employee further agrees that while employed by the Company, he will not have any financial interest, directly or indirectly or, on his own behalf or another's behalf, engage in any manner in any business similar to the business of the Company.

12.     NON-SOLICITATION. (A)The Employee agrees that during the course of Employee's employment and for a period of six (6) months after the cessation of his employment, for any reason, or for six (6) months from the date of any court order enforcing this provision of this Agreement, whichever is later, the Employee shall not solicit on the Employee's behalf or on behalf of any of the Company's competitors, or attempt to solicit on Employee's behalf or on behalf of any of the Company's competitors, or assist any of the Company's competitors in soliciting any customer or customer account with which Employee had contact during the last (1) year of the Employee's employment with the Company; and (B) Employee shall not solicit, or cause to be solicited, directly or indirectly, any employee or independent contractor of the Company to leave or terminate the employment or business relationship with the Company

13.     REASONABLENESS OF RESTRAINTS, IRREPARABLE HARM. The Employee acknowledges, with respect to Paragraphs 4, 11, and 12, that: a) the covenants contained therein are reasonably necessary to protect the goodwill, trade secrets, and other business interests of the Company; b) any breach of the covenants contained therein will cause the Company immediate irreparable harm for which injunctive relief would be necessary; c) the covenants contained therein are essential and material elements of this Agreement and the Company would not have entered into this Agreement or permitted the Employee to obtain employment or remain employed without those covenants being included in this Agreement; d) the Employee has had the opportunity to consult with and be advised by legal counsel concerning the reasonableness and propriety of the covenants contained therein; and e) in the event of any violation or attempted violation of the covenants contained therein, the Company shall be entitled to a temporary restraining order, temporary or permanent injunctions, and other injunctive relief, without any showing of irreparable harm or damage, and without posting a bond, in addition to any other rights or remedies which may then be available to the Company.

14.     EMPLOYMENT AT-WILL. The Employee acknowledges that the Employee's employment relationship with the Company is at-will and that either party may terminate the relationship, for any reason, with or without cause and without notice.

15.     WAIVER OF BREACH. The Company's waiver of a breach of any provision of this Agreement by the Employee does not waive any subsequent breach by the Employee, nor does the Company's failure to take action against any other employee for similar breaches operate as a waiver by the Company of a breach.

16.     EMPLOYEE'S REPRESENTATION AND WARRANTIES. Employee represents that he or she is not subject to any agreement or restriction limiting in any way the scope of this Agreement, or in any way inconsistent with any of the promises made by Employee in this Agreement. Employee also understands that the Company will not require nor expect Employee to disclose to the Company or use at or for the Company any secret or confidential information or trade secret that the Employee obtained from any of his or her former employers, which is not publicly available. Employee agrees not to use at or for the Company any such secrets or confidential information. Employee agrees to indemnify and hold the Company harmless from any and all claims that this Agreement and/or employment of Employee by the Company violate the rights of any third party or parties, and from any costs and expenses, including attorneys' fees, incurred by the Company in the defense thereof.

17.     DISCLOSURES OF THIS AGREEMENT. The Employee shall deliver a copy of the Agreement to each person, firm or other entity which is competitive with the Company, and with which he seeks employment, partnership, or other business association within six (6) months of termination of the Employee's employment with the Company, whether by resignation or otherwise. Employee agrees that at the termination of employment with the Company, Employee shall inform the Company of the name and address of the Employee's new employer prior to commencement of that new employment relationship. The Employee further consents to the Company transmitting a copy of this Agreement to any person or firm with which the Employee seeks employment, partnership, or other business association within six(6) months of termination of the Employee's employment with the Company, whether by resignation or otherwise.

18. **FORUM AND LAW SELECTION.** This Agreement shall be construed in accordance with and governed for all purposes by the law of the State of New Jersey, without regard to its conflict of law provisions. The parties consent and agree that any and all litigation between them arising from this Agreement shall take place in the State of New Jersey and Employee hereby expressly consents to the jurisdiction of the federal or state courts of New Jersey.

19. **MISCELLANEOUS.** This Agreement supersedes any and all prior understandings and agreements between the parties concerning the Employee's ability to compete with The Company, and/or to solicit its customers, potential customers, employees and independent contractors. This Agreement may not be altered or amended except in writing, signed by the Employee and an authorized representative of the Company. To the extent any portion of this Agreement, or any portion of any provision of this Agreement, is held to be invalid or unenforceable, it shall be construed by limiting and reducing it so as to be enforceable to the extent compatible with applicable law. All remaining provisions, and/or portions thereof, shall remain in full force and effect. This Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns, related or associated entities, and the Employee.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above mentioned.

**Samsung Electronics America**                    **"Employee"**

By:_____                _____
                                            Employee—Clay L. Miller

                                            _____
                                            Witness

# Exhibit C

# SAMSUNG

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, New Jersey 07660
(201) 229-4000

<u>**VIA ELECTRONIC (rick.wingate@lge.com) AND OVERNIGHT MAIL**</u>

July 11, 2018

Richard Wingate
Vice President Compliance & Legal, General Counsel
1000 Sylvan Avenue
Englewood Cliffs, NJ 07632

      **Re:**    <u>**Clayton Miller - Notice of Post-Employment Obligations**</u>

Dear Mr. Wingate,

It has come to the attention of Samsung Electronics America, Inc. ("SEA" or the "Company") that LG Electronics U.S.A., Inc. ("LG") has offered employment to and/or already hired Clayton Miller. This letter serves as notice of Mr. Miller's Post-Termination and Confidentiality Obligations owed to SEA.

Specifically, please be aware that the Confidentiality, Non-Competition and Non-Solicitation Agreement Mr. Miller executed on May 15, 2006 ("Confidentiality Agreement") contains the following post-employment covenants:

- **Confidentiality Obligations**: Not to disclose to others or use for his or another's benefit any Trade Secrets or Confidential Information (as defined in the Confidentiality Agreement[1]) either during his employment with SEA or thereafter.

- **Return of SEA Property**: To deliver to SEA immediately upon termination of his employment all SEA property in his possession or under his control, including but not limited to, all records, files, reports, data, memoranda, notes, drafts and other documents and copies thereof, models and equipment of any nature owned by SEA.

- **Post-Employment Non-Competition Obligation**: Not to enter into or engage, as an employee or otherwise, in a business that is competitive with SEA, anywhere within Texas, in any product category for which he had responsibilities while employed by SEA, for a period of *six (6) months after the termination of his employment with SEA*.

---

[1] The Confidentiality Agreement defines "Trade Secrets" as "any scientific or technical information, design, process, procedure, formula, pattern, device or compilation of information or improvement which is used in the Company's business which is valuable and not generally known to third parties." "Confidential Information" is defined as "any proprietary or business-sensitive information which is not known to the public and which, if released to unauthorized persons, would be detrimental to the reputation or business interests of the Company, its affiliates or parties with which it does business, or would permit such unauthorized persons to improperly benefit."

- **Post-Employment Non-Solicitation Obligation (Customers)**: Not to solicit or attempt to solicit on his own behalf or on behalf of any of SEA's competitors, or assist any of SEA's competitors in soliciting, any customer or customer account with which he had contact during the last year of his employment with SEA, for a period of *six (6) months after the termination of his employment with SEA*.
- **Post-Employment Non-Solicitation Obligation (Employees/Independent Contractors):** Not to solicit or cause to be solicited any employee or independent contractor of SEA to leave or terminate his/her employment or business relationship with the Company, for a period of *six (6) months after the termination of his employment with SEA*.
- **Disclosures of Confidentiality Agreement**: To deliver a copy of the Confidentiality Agreement to each SEA competitor with which he seeks employment, partnership, or other business association, during the *six (6) months after the termination of his employment with SEA*.

Further, please be aware that SEA has reason to believe that Mr. Miller has already violated his obligations under the Confidentiality Agreement. Our inspection of Mr. Miller's electronic activities prior to his separation from SEA revealed that Mr. Miller forwarded numerous SEA files from his SEA email account to his personal Gmail account in the days before giving notice of his resignation on July 2, 2018. The files Mr. Miller forwarded to his Gmail account include highly confidential and proprietary SEA information, such as materials containing customer pricing data, sell thru information, SEA 2018 holiday retail plans/pricing and other sensitive sales data. Mr. Miller's misappropriation of SEA competitive, confidential and proprietary information strongly suggests that he does not intend to honor his post-employment confidentiality, non-competition and non-solicitation obligations to SEA.

Mr. Miller has been put on notice of his post-termination obligations to SEA and we expect that LG will not take any steps to interfere with such obligations or otherwise accept or utilize any confidential or proprietary SEA information.

Please be advised that SEA takes these actions seriously and continues to investigate this matter. This letter is being sent in an effort to avoid legal action against Mr. Miller and LG. In order to avoid legal action, SEA requests that you take the steps below:

(1) Confirm in writing that LG is not in possession of any SEA confidential or proprietary information or documents, whether in hard copy or electronic format.

(2) Confirm in writing that LG will not ask Mr. Miller to disclose any of SEA's confidential or proprietary information or documents.

(3) Confirm in writing that LG will not take any action to encourage breach of Mr. Miller's post-employment obligations to SEA, including his confidentiality obligation and his 6-month non-competition and non-solicitation covenants and will not employ Mr. Miller in a position that is otherwise prohibited by his restrictive covenants during the applicable 6-month period.

Please provide the above written confirmation no later than Monday, July 16, 2018. If you would like to discuss this matter further, please contact me.

Sincerely,

Jamal Haughton
SVP and General Counsel
Samsung Electronics America, Inc.

cc:     Clayton Miller
        Mary Kim-Candullo, SEA Director of Human Resources